IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GEORGIA S. MARLIN, | |
| Plaintiff, | **8:20-CV-181** |
| vs. | |
| BOSTON SCIENTIFIC CORPORATION, | **MEMORANDUM AND ORDER** |
| Defendant. | |

## I.  INTRODUCTION

This matter is before the Court on Georgia Marlin's motion to exclude certain opinion testimony of Dr. Karyn Eilber. Filing 42. This is a products-liability, personal-injury case arising from Marlin being implanted with a surgical mesh manufactured by Boston Scientific Corporation ("BSC"). Dr. Eilber is a physician retained as an expert witness by BSC for this litigation. The Court will partially grant and partially deny Marlin's motion for the reasons stated herein.

## II.  BACKGROUND

This case comes before the Court following transfer from multi-district litigation panel at docket number 2326. Filing 46-6. The case was part of the fifth wave of cases to be transferred to various district courts for final disposition. Filing 46-6.

Plaintiff Georgia Marlin alleges in November 2011, she was implanted with an Obtryx mid-urethral sling system to treat her stress urinary incontinence ("SUI"). Filing 20 at 5. She further alleges that because of the implantation of this device, she "experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures . . . and other damages." Filing

46-4 at 16. Marlin brings numerous products-liability, personal-injury claims against BSC. Filing 1 at 4-5. BSC denies liability for Marlin's injuries. Filing 46-5 at 8-12.

Prior to this case's transfer to this Court, the MDL judge, the Honorable Joseph R. Goodwin, set deadlines concerning disclosure of experts in pre-trial order number 196 ("PTO 196"). Filing 13. PTO 196 also set forth how the parties were to file *Daubert* motions. Filing 13 at 5-6. Judge Goodwin directed the parties to file "*Daubert* motions on general causation issues only," in the MDL; specific causation motions in their individual cases; and where an expert was both general and specific, the parties were to file a general causation motion in the MDL and a specific causation motion in the individual case. Filing 13 at 5-6. BSC disclosed Dr. Eilber as one of its retained expert witnesses, Filing 42-1 at 2, and provided Marlin with a Rule 26 report detailing her opinions, Filing 42-2. Marlin now challenges the admissibility of several Dr. Eilber's disclosed opinions. Filing 42. In addition, the parties dispute whether Dr. Eilber was designated as a case-specific expert only and whether Marlin can properly challenge Dr. Eilber's general causation opinions by means of the current motion. Filing 42 at 1-2; Filing 43 at 2-3.

### III. DISCUSSION

Marlin moves to exclude seven of Dr. Eilber's opinions or groups of opinions proffered in her Rule 26 expert report (Filing 42-2). Filing 42. BSC opposes Marlin's motion in all respects. Filing 43. As an initial matter, the parties also dispute the scope of Dr. Eilber's expert designation and whether this motion is properly before this Court. Filing 42 at 1-2; Filing 43 at 2-3. The Court will first address the scope dispute. The Court will then consider each set of challenged opinions, beginning with those Marlin has challenged as general and beyond the scope of Dr. Eilber's Rule 26 designation, followed by the challenged case-specific opinions. Ultimately, the Court partially grants and partially denies Marlin's motion.

2

### A. Legal Standard

Under Federal Rule of Evidence 702, expert opinion testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue," it is "based upon sufficient facts or data," and it is "the product of reliable principles and methods," which have been reliably applied "to the facts of the case." Fed. R. Evid. 702. The court must be mindful that expert opinions "can be both powerful and quite misleading." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993). In considering admissibility, the district court's job as gatekeeper is to "ensure that all scientific testimony is both reliable and relevant." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (citing *Daubert*, 509 U.S. at 580, 113 S. Ct. at 2790, 125 L. Ed. 2d). The inquiry "is a flexible one designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999)). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Id.* at 758. However, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *In re Wholesome Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) (citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000)).

"A district court has great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 776 (8th Cir. 2004). To meet the reliability requirement, the proponent of an expert opinion must show "that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Marmo*, 457 F.3d at 757-58; *see also Daubert*, 509 U.S. at 592-

93, 113 S. Ct. at 2796, 125 L. Ed. 2d (stating that the court must assess "whether the reasoning or methodology underlying [an expert opinion] is scientifically valid"). "[C]onclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." *Marmo*, 457 F.3d at 758.

To satisfy the relevance requirement, the proponent of an expert opinion must demonstrate "that the reasoning or methodology in question is applied properly to the facts in issue." *Id.* A court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146, 118 S. Ct. at 519, 139 L. Ed. 2d. In exercising its gatekeeping role under *Daubert*, the court must focus "specifically on the methodology." *Synergistics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007).

### B. Scope of Expert Designation

Before reaching the admissibility of Dr. Eilber's individual opinions, the Court must address the parties' dispute over the scope of Dr. Eilber's expert designation. Marlin argues Dr. Eilber was disclosed only as a case-specific expert, making this, the individual case, the appropriate venue to challenge any of her opinions per PTO 196. Filing 42 at 1-2. Marlin also contends Dr. Eilber's general opinions should be excluded because of her case-specific designation. Filing 42 at 1-2. BSC points out, however, that its disclosure naming Dr. Eilber as a retained expert witness does not specify her as either a general or a specific expert. Filing 43 at 2 (citing Filing 42-1). BSC contends Dr. Eilber was therefore disclosed as both a general and specific expert, and both her general and specific causation opinions are admissible. Filing 43 at 2. Further, BSC argues, because Dr. Eilber is both a general and specific expert, Judge Goodwin's docket control order (PTO 196) required Marlin to challenge Dr. Eilber's general causation opinions by

filing a motion in the MDL rather than before this Court, making this motion untimely to the extent

Marlin challenges Dr. Eilber's general opinions. Filing 43 at 3. The Court agrees with Marlin and

finds Dr. Eilber was not disclosed as a general-causation expert, that Marlin's motion was therefore

properly made in the present case rather than in the MDL case, and that Dr. Eilber's general expert

opinions should be excluded.

In assessing whether BSC properly disclosed Dr. Eilber as a general expert, the Court must

consider the previous court's discovery instructions to the parties. In PTO 196, Judge Goodwin set

the deadline for MDL defendants' expert disclosures for March 22, 2019. Filing 13 at 3. The parties

were also directed to "coordinate the depositions of general causation experts" to ensure they were

deposed only once on issues of general causation. Filing 13 at 4. The parties were to file *Daubert*

motions no later than May 13, 2019. Filing 13 at 3. "For the filing of *Daubert* motions on general

causation issues only, the parties [were] instructed to file one *Daubert* motion per expert in the

main MDL (MDL 2326) instead of the individual member case." Filing 13 at 5. Specific-causation

*Daubert* motions were to be filed in the individual member cases. Filing 13 at 6. In the case of an

expert that was "both a general and specific causation expert," the parties were to "file a general

causation motion in the main MDL 2326 and an individual specific causation motion in an

individual member case." Filing 13 at 6. So, if Dr. Eilber was properly disclosed as both a general

and specific expert, Marlin's challenge to her general-causation opinions is not properly before

this Court. But, if Dr. Eilber was only disclosed as a specific-causation expert, Marlin can rightly

challenge any of her opinions here.

The Court notes first that BSC is correct that its disclosure designating Dr. Eilber as an

expert witness does not specify whether any of the named experts are general, specific, or both; on

its face, the disclosure merely designates these witnesses as experts. *See* Filing 43 at 2 (citing

Filing 42-1). BSC's strategy of using nondescript disclosure of its case-specific experts and then arguing that their general opinions should be admitted on that basis has failed in previous waves of this litigation. *See Castillo v. Bos. Sci. Corp.*, No. 1:20-cv-00513, 2020 WL 2771193, at *8-9 (W.D. Tx. May 28, 2020) (discussing previous exclusions of a case-specific expert's general opinions despite disclosure as a "retained expert witness"); *see also In re Bos. Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2326, 2018 WL 8054249, at *2 (S.D.W. Va. May 30, 2018) ("While [a case-specific expert] is permitted to rely on the general causation opinions proffered by experts who are properly designated to offer such opinions when forming her case-specific opinions relating to particular plaintiffs, she may not exceed the bounds of her designation by offering these opinions herself."). When other BSC experts sought to act as both general- and specific-causation experts during this litigation, they filed general expert reports with case-specific supplements, putting plaintiffs on notice that the expert was acting in both capacities. *See, e.g.*, Filing 46-12 at 6 (noting case-specific supplemental reports were prepared by an expert providing both general- and specific-causation opinions). Here, Dr. Eilber's sole report identifies only Marlin's individual case immediately after its title. Filing 42-2 at 1. This indicates disclosure as a specific expert only.

BSC contends that the Court should find Dr. Eilber was disclosed as both case-specific and general because her case-specific report nevertheless included a number of general opinions. Filing 43 at 2. BSC's refers to this as "the widespread practice by both plaintiffs and defendants in this litigation," but the Court finds this argument unavailing. *See* Filing 43 at 2. BSC has attempted versions of this argument previously during this litigation and failed for good reason. *See Castillo*, 2020 WL 2771193, at *8-9. For example, in *Castillo*, the Western District of Texas rejected BSC's argument that its expert should be allowed to testify to her general opinions because BSC never

specified whether she was general, specific, or both. *Id.* at *8. The court looked to the expert's report and the MDL court's previous rulings on nearly identical reports from similar witnesses to find that the expert was disclosed only as case-specific. *Id.* at *8-9. BSC described the report in *Castillo* as containing "'nearly 8 pages of opinions generally relating to polypropylene mesh midurethral slings and stress urinary incontinence' followed by 'several pages of opinions specific to [Plaintiff]' . . . ." *Id.* at *8 (quoting BSC's brief in opposition to the *Castillo* plaintiff's motion to exclude expert opinion). The court concluded that, in line with the MDL court's previous rulings, the expert's general opinions should be excluded due to BSC's failure to disclose her as a general expert. *Id.* at *9.

Here, BSC describes Dr. Eilber's report almost identically to that of the expert in *Castillo*. *See* Filing 43 at 2 ("nearly 9 pages of opinions generally relating to polypropylene mesh midurethral slings and stress urinary incontinence . . . then . . . several pages of opinions specific to Plaintiff"). *Castillo*, along with the MDL orders cited above, makes clear that reports of this nature alone do not serve, within the context of this litigation, as disclosure of an expert as both general and specific. Further, it suggests all parties were on notice that the correct understanding of Dr. Eilber's designation was that of case-specific only.

Finally, PTO 196 directed the parties to coordinate deposition of general-causation experts. Filing 13 at 4. There is no indication that the parties here coordinated to depose Dr. Eilber as a general-causation expert, further suggesting she was not disclosed as such. Plaintiff's counsel actually noted during Dr. Eilber's deposition that she had not been deposed as a general expert, suggesting Marlin had no notice BSC intended for Dr. Eilber to present general-causation opinions. *See* Filing 43-2 at 53.

PTO 196 directed BSC to make full expert disclosure by March 22, 2019. Filing 13 at 3. BSC chose not to expressly disclose Dr. Eilber as general-causation expert, as it did other experts during this litigation. *Compare* Filing 42-1, *with* Filing 42-4; *see also* Filing 46-12 at 6 (noting general reports and case-specific supplements); *Castillo*, 2020 WL 2771193, at *8-9 (detailing the history of BSC's expert designations and disclosures). In the context of this litigation, Dr. Eilber's report and the way BSC chose to disclose her as an expert reveal that she was disclosed only as a case-specific expert. The Court finds that Dr. Eilber was not disclosed as a general-causation expert, and the time for such disclosure has passed. *See* Filing 13 at 3 (setting a March 2019 deadline). Because the Court finds that Dr. Eilber was not disclosed as "both a general and specific causation expert," Filing 13 at 3, the Court finds that Dr. Eilber's opinions will be excluded to the extent that they constitute general-causation testimony and Marlin properly submitted her *Daubert* motion here, in her individual case. *See* Filing 13 at 6.

### C.  Opinions Challenged as General

The Court first analyzes the opinions of Dr. Eilber that Marlin claims are of a general nature and should therefore be excluded due to BSC failing to disclose Dr. Eilber as a general-causation expert. The Court concludes portions of these opinions should be excluded and other portions are admissible as non-general testimony.

1. *Opinions that the Obtryx is a Safe and Effective Treatment for SUI*

Marlin challenges the admissibility of Dr. Eilber's opinions that the Obtryx is a safe and effective treatment for SUI as a general-causation issue beyond her designation. Filing 42 at 6. BSC contends Dr. Eilber's general opinions are necessary to support her specific opinions and should be admitted. Filing 43 at 4. The Court finds that Dr. Eilber's opinions in this respect relate to general causation and will accordingly exclude them.

"General causation is a showing that the [product] is capable of causing the type of harm from which the plaintiff suffers." *Junk v. Terminix Intern. Co.*, 628 F.3d 439, 450 (8th Cir. 2010).

Dr. Eilber's opinions regarding the Obtryx device's safety and efficacy speak to its capacity to cause harm to the patient population and do not reference Marlin specifically. Filing 42-2 at 5, 25. Therefore, Dr. Eilber's opinions in this regard are a matter of general causation. BSC argues though, that Dr. Eilber's general opinions are necessary to provide context and are "inextricably intertwined" with her case-specific opinions. Filing 43 at 4. Prior to this case's transfer from the MDL court, Judge Goodwin rejected identical arguments, holding that while case-specific experts may rely on qualified expert opinions to inform their work, they may not exceed their case-specific designation by offering such general opinions themselves. *In re Bos. Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.*, 2018 WL 8054249, at *2. This Court sees no reason to deviate from Judge Goodwin's ruling. Doing so would be counter to the law-of-the-case doctrine.[1] Therefore, the Court grants Marlin's motion to exclude testimony from Dr. Eilber concerning her opinion of the safety and efficacy of the Obtryx device in general.

### 2. *Opinion that the DFU Adequately Warns of All Potential Complications*

Next, Marlin challenges the admissibility of Dr. Eilber's opinion that the Obtryx Directions for Use ("DFU") "adequately warn[] of all potential risks and complications, including those suffered by Marlin." Filing 42 at 6-7. Marlin argues Dr. Eilber lacks expertise in product-warning labels and does not have knowledge of what BSC did or did not know or omit, thereby rendering her unqualified to opine on the DFU's adequacy. Filing 42 at 6-7. BSC argues that Dr. Eilber's training and experience as a urogynecologist qualify her to consider the injuries Marlin complained

---

[1] The law-of-the-case doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008) (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995).

of and the warnings presented in the DFU, compare them, and opine as to whether the DFU adequately warned of the injuries suffered. Filing 43 at 7-8. The Court agrees that "[an experienced physician] need not be an expert on product warnings per se" to evaluate a product warning within their field of medical expertise. *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 719 (S.D.W. Va. 2014). Dr. Eilber's methodology, comparing the DFU's warnings and the injuries identified in Marlin's medical records, is obvious and scientifically sound. The Court finds that Dr. Eilber is qualified to opine as to whether the DFU adequately warned of the injuries Marlin alleged and therefore denies Marlin's motion in this respect.

However, to the extent BSC argues that Dr. Eilber may opine that the DFU warned of "all possible risks," the Court does not agree. *See* Filing 43 at 7-9. BSC takes this opportunity to challenge the reasoning of the MDL court in ruling on a similar issue. Filing 43 at 7-9 (disagreeing with the court's decision to exclude BSC's expert evidence in *Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501 (S.D.W. Va. 2014)). In *Tyree*, the court decided that an expert physician, after witnessing unwarned-of complications in his medical practice, could later opine that the manufacturer-provided warning was lacking. *Id.* at 584. But a similar expert encountering zero complications falling outside of the warning's text may not opine that the warning disclaims all possible complications. *See id.* This Court agrees with the MDL court's reasoning. The former expert in *Tyree* arrived at his opinion based on direct observation of an event and its conspicuous absence from the warning in question. His conclusion that the warning was incomplete is sound because it was based on specific experience. The same cannot be said of the latter expert whose personal experience did not encompass all possible complications. The former expert used reliable and scientifically sound methodology to arrive at his opinion; the latter expert did not. Contrary to

BSC's contention, the *Tyree* court properly focused on the methodology used by the experts to arrive at their conclusions, in keeping with *Daubert's* command. *See* Filing 43 at 8-9.

The Court finds that Dr. Eilber may opine on the adequacy of the DFU with respect to Marlin and her injuries specifically, but she may not opine on the DFU's adequacy in general, nor that it "adequately warns of all potential complications." *See* Filing 42-2 at 25. The Court partially grants and partially denies Plaintiff's motion to exclude the testimony accordingly.

3.  *Opinion that There Is No Clinical Evidence the Obtryx Is Defective or Unreasonably Dangerous*

Marlin challenges the reliability of Dr. Eilber's opinion that there is no clinical evidence the Obtryx is "defective" or "unreasonably dangerous," asserting that her claim lacks a proper factual basis. Filing 42 at 7-8. Marlin also challenges the opinion as general and improper for a case-specific expert to present at trial. Filing 42 at 8. BSC cites Dr. Eilber's extensive review of medical literature and records as indicia of reliability. Filing 43 at 9-11.

The Court agrees with BSC that Marlin's primary argument regarding the reliability of Dr. Eilber's opinion is a veiled attack on the opinion's weight rather than its admissibility. *See* Filing 43 at 10. However, the Court notes that the parties to this litigation were repeatedly warned by Judge Goodwin that they would not be permitted to use experts to invade the province of the jury, and more specifically, that experts must avoid presenting their opinions in legal terms such as "defective" and "unreasonably dangerous." *See, e.g.*, *Wilkerson v. Bos. Sci. Corp.*, No. 13-cv-04505, 2015 WL 2087048, at *3 (S.D.W. Va. May 5, 2015) (Judge Goodwin in a case on the MDL docket repeating his prior order that such opinions are impermissible). Though an expert opinion that embraces an ultimate issue may be admissible, "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the

benefit of expert opinion." *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015). The Court finds that Dr. Eilber's opinion that there is no clinical evidence that the Obtryx is defective or unreasonably dangerous should not be allowed. The jury can answer this ultimate question of fact without specific direction from an expert. What is left of Dr. Eilber's opinion on this matter addresses the propensity for the Obtryx to do harm to patients, a matter of general causation. *See Junk*, 628 F.3d at 450. The Court excludes this general opinion and grants Marlin's motion on this point.

4. *Opinion Regarding the Propensity of the Polypropylene to Degrade, Contract, Cause Systemic Infection and/or Cancer, and Become Encapsulated*

Marlin also challenges the admissibility of Dr. Eilber's opinion "that the claims that polypropylene implanted in the pelvic floor degrades, significantly contracts, causes systemic infection, and/or cancer, and becomes encapsulated are not supported by medical evidence." Filing 42 at 9. Marlin asserts that this opinion is unreliable and general in nature. Filing 42 at 9. Dr. Eilber's opinion in this regard speaks directly to the Obtryx device's capability to cause harm of the type suffered by Marlin but does not address Marlin's injuries specifically. Therefore, the opinion addresses matters of general causation. *See Junk*, 628 F.3d at 450. The Court finds that Dr. Eilber may not testify to this opinion because she was not disclosed as a general causation expert. Plaintiff's motion is granted in this respect.

**D. Specific Opinions**

The Court next examines the specific opinions of Dr. Eilber which Marlin moves to exclude. "Specific causation is evidence that the [product] in fact caused the harm from which the plaintiff suffers." *Id.*

1. *Opinions Critical of the Care Provided by Marlin's Physicians*

Marlin moves to exclude Dr. Eilber's "opinions regarding her criticisms" of the care Marlin's physicians provided. Filing 42 at 5-6. Under Federal Rule of Civil Procedure 26(2)(B)(1), an expert witness's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(2)(B)(1). The Court has reviewed Dr. Eilber's report and finds no opinions that could fairly be construed as criticisms of the care Marlin's physicians provided to her. To the extent the defense would try to elicit undisclosed opinions, the Court will not allow it. Finding no opinions in Dr. Eilber's report that assess the quality of care Marlin's physicians provided, there is nothing for the Court to exclude at present. Plaintiff's motion regarding opinions critical of the care provided to Marlin is denied.

2. *Opinion There Is No Evidence Marlin's Obtryx Device Was Chronically Infected, Shrunk, or Degraded*

Marlin challenges the admissibility of Dr. Eilber's opinion that she has "not seen any evidence demonstrating Ms. Marlin's Obtryx device was chronically infected, or that it underwent any shrinkage or degradation." Filing 42 at 9 (quoting Filing 42-2 at 25). Marlin asserts Dr. Eilber's opinions are "speculative, conclusory, and wholly unreliable" because her report lacks any detail relating to them. Filing 42 at 10. Marlin also points out that this matter is not addressed in Dr. Eilber's deposition testimony nor outside of her opinion summaries in her report. Filing 42 at 9-10. BSC counters that Marlin never asked Dr. Eilber to address this opinion during her deposition, and the Court should not punish it for Marlin's failure to ask for an explanation. Filing 43 at 12. BSC does not point to anywhere in Dr. Eilber's report that allows the Court to determine the basis for Dr. Eilber's opinion, however. *See* Filing 43.

"To satisfy the reliability requirement, the *proponent* of the expert testimony must show . . . that the methodology underlying his conclusions is scientifically valid." *Marmo*, 457 F.3d at

757-58 (emphasis added). Here, the onus is on BSC to demonstrate to the Court that Dr. Eilber employed valid methodology in reaching her conclusion, and it has not done so. In response to Marlin's challenge of Dr. Eilber's methodology, BSC merely attempts to shift its burden onto Marlin. *See* Filing 43 at 12. Because the Court cannot see how Dr. Eilber arrived at her opinion in either her deposition or report, Marlin's motion is granted on this point, and the opinion will be excluded as unreliable.

### 3. *Opinion that Marlin's Injuries Were Unrelated to a Defect in the Obtryx Device*

Finally, Marlin seeks to exclude Dr. Eilber's opinions that Marlin's injuries were unrelated to any defect in the Obtryx sling. Filing 42 at 10. Marlin contends that some of Dr. Eilber's statements during her deposition demonstrate that she believes the Obtryx "played some role in Ms. Marlin's injuries," and such an admission is inconsistent with the opinions stated in her report, rendering them unreliable. Filing 42 at 10. BSC argues that Marlin takes deposition statements out of context to best support her position, and Dr. Eilber's opinions regarding the relationship between alleged Obtryx defects and Marlin's injuries are well-supported. Filing 43 at 12-14. The Court agrees with BSC.

Dr. Eilber's report indicates her thorough review of Marlin's medical history and treatment records. *See* Filing 42-2 at 9-22. Further, she details the injuries claimed by Marlin, identifies possible causes, and then arrives at her opinion of the likely cause by differential diagnosis. Filing 42-2 at 22-24. Marlin does not question these methods in her motion. *See* Filing 42 at 10.

"[A] medical opinion about causation, based upon a proper differential diagnosis, is sufficiently reliable to satisfy *Daubert*." *Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000). Here, the Court finds that Dr. Eilber applied reliable methods to the facts of this case to determine that Marlin's injuries were unrelated to a defect in her Obtryx sling. Even

14

attempting to read Dr. Eilber's deposition as narrowly as Marlin does, the Court does not consider Dr. Eilber's acknowledgement of a possibility the Obtryx device bears some relationship to Marlin's injuries to be inconsistent with her position that her injuries were unrelated to any *defect* in the Obtryx. *See* Filing 42 at 10. Nor does the Court find her opinion any less reliable as a result. Therefore, the Court denies Marlin's motion to exclude Dr. Eilber's opinion that Marlin's injuries are unrelated to a defect in the Obtryx device.

## IV. CONCLUSION

For the foregoing reasons, Marlin's Motion in Limine is partially granted and partially denied. The following of Dr. Eilber's potential opinion testimony will be excluded:

- any opinions that the Obtryx is a safe and effective treatment for SUI;

- any opinions that the Obtryx DFU adequately warns of all potential complications;

- any opinions that there is no clinical evidence indicating the Obtryx is unreasonably dangerous or defective;

- opinions that the claims that polypropylene implanted in the pelvic floor degrades, significantly contracts, causes systemic infection, and/or cancer, and becomes encapsulated are not supported by medical evidence; and

- any opinions that there is no evidence Marlin's Obtryx device was chronically infected, or shrunk, or degraded.

The following of Dr. Eilber's potential opinion testimony that is the subject of Marlin's motion will be allowed:

- the DFU adequately warned of Marlin's injuries; and

- Marlin's injuries are unrelated to a defect in the Obtryx device.

The Court further will not provide the blanket prohibition requested by Marlin of testimony from Dr. Eilber that is critical of the medical treatment provided to Marlin because she has not pointed to any specific opinions she seeks to have excluded. The Court also reminds the parties that while specific causation experts may not opine themselves on matters of general causation, they may rely on the general causation opinions of experts properly designated to offer them in forming their case-specific opinions relating to the individual plaintiff.

IT IS ORDERED:

1. Plaintiff's Motion in Limine (Filing 42) is partially granted and partially denied as set forth above.

Dated this 9th day of October, 2020.

BY THE COURT:

Brian C. Buescher
United States District Judge

16